**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BLAIR DOUGLASS, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> MONDELĒZ GLOBAL LLC, <br><br> Defendant. | Civil Action No. 2:22-cv-00875-WSH |

**ORDER GRANTING PLAINTIFF'S UNOPPOSED MOTION FOR**
**CERTIFICATION OF THE SETTLEMENT CLASS AND**
**FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

Pending before the Court is Plaintiff's Unopposed Motion For Certification Of The Settlement Class And Final Approval Of The Class Action Settlement.

On April 13, 2023, the Court preliminarily approved the proposed class action settlement set forth in the Agreement,[1] directed that notice of the Agreement be given to the Settlement Class, and preliminarily certified the following Settlement Class:

> [A] national class including all Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who may access, attempt to access, or be deterred from attempting to access, the Websites [*sic*] from the United States.

(Doc. 16.)

On September 19, 2023, the Court held a final fairness hearing to consider: whether the terms of the Agreement are fair, reasonable, and adequate, such that the Agreement should be finally approved pursuant to Fed. R. Civ. P. 23(e)(2); whether reasonable notice of the Agreement

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meaning set forth in the settlement agreement, which is attached hereto as Order Exhibit A.

was given to the Settlement Class pursuant to Fed. R. Civ. P. 23(e)(1)(B) and (c)(2)(A); and whether the Settlement Class should be certified pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

Having carefully considered Plaintiff's motion and all accompanying documents, including the Agreement, as well as the relevant legal authority, the Court hereby grants final approval of the Agreement and certification of the Settlement Class as more specifically set forth below.

NOW, THEREFORE, IT IS HEREBY ORDERED:

1.    The Court has personal jurisdiction over the Parties, venue is proper, and the Court has subject matter jurisdiction to approve the Agreement and to enter this order.

2.    The Agreement was negotiated at arm's length by experienced counsel who were fully informed of the facts and circumstances of this litigation and of the strengths and weaknesses of their respective positions. The Agreement was reached after the Parties engaged in extensive settlement discussions. Counsel for the Parties were thus well-positioned to evaluate the benefits of the Agreement, taking into account the expense, risk, and uncertainty of protracted litigation.

3.    The Court finds that the terms of the Agreement are fair, reasonable, and adequate in all respects. As a result, the Court grants full and final approval of the Agreement pursuant to Fed. R. Civ. P. 23(e).

4.    The Court finds that notice of the Agreement, as provided: (i) was directed in a reasonable manner to the Settlement Class Members; (ii) was reasonably calculated to apprise the Settlement Class Members of, *inter alia*, the pendency of the Lawsuit, the nature and terms of the proposed settlement, their right to object to the proposed settlement, and their right to appear at the final fairness hearing; (iii) constituted due, appropriate, and adequate notice to all persons entitled to be given notice; and (iv) complied fully with the requirements of Fed. R. Civ. P. 23, the United States Constitution, the Rules of this Court, and any other applicable law or rule.

5.      The Parties are hereby directed to implement the Agreement according to its terms.

6.      The Settlement Class is hereby certified pursuant to Fed. R. Civ. P. 23(a) and (b)(2) for purposes of settlement. The Settlement Class is defined as:

> [A]ll Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who may access, attempt to access, or be deterred from attempting to access, the Websites from the United States.

7.      The Court finds that Plaintiff Blair Douglass will fairly and adequately protect the interests of the Settlement Class. As a result, the Court appoints and designates Mr. Douglass as representative of the Settlement Class.

8.      The Court finds that attorneys Kevin Tucker, Kevin Abramowicz, Chandler Steiger, and Stephanie Moore of East End Trial Group LLC are experienced and competent counsel who will continue to fairly and adequately protect the interests of the Settlement Class. As a result, the Court appoints and designates attorneys Tucker, Abramowicz, Steiger, and Moore as Class Counsel for the Settlement Class.

9.      Upon entry of this order, the Injunctive Releasing Parties shall fully and finally release, acquit, and discharge Defendant from the Released Injunctive Claims as set forth in the Agreement. Pursuant to this release, Plaintiff and the Settlement Class Members shall not bring any claims concerning the Accessibility of the Digital Properties during the Agreement Term. Notwithstanding this release, Plaintiff and the Settlement Class Members may fully utilize the Dispute Resolution Procedure during the Agreement Term. Plaintiff and the Settlement Class are, from this day forward, hereby enjoined from asserting any Released Injunctive Claims through the Agreement Term.

10.     The Parties shall move to dismiss the Lawsuit with prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure no later than thirty (30) days following the expiration of

the Agreement Term. Pursuant to *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994),

the Parties' joint motion shall request that the Court's dismissal order expressly retain the Court's

jurisdiction to enforce the Agreement against the Parties.

      IT IS SO ORDERED this <u>  19th  </u> day of <u>  September  </u> , 2023.



<u> /s/ W. Scott Hardy                        </u>
W. Scott Hardy
United States District Judge

# Order Exhibit A

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| BLAIR DOUGLASS, on behalf of himself and all similarly situated individuals,<br><br>         Plaintiff,<br><br>   v.<br><br>MONDELĒZ GLOBAL LLC,<br><br>         Defendant. | Civil Action No. 2:22-cv-00875-WSH |

## <u>SETTLEMENT AGREEMENT</u>

## Table of Contents

1.   Introduction ..................................................................................................... 1

2.   Definitions ...................................................................................................... 2

3.   Conditions Precedent ..................................................................................... 5

4.   Mondelēz Global LLC Shall Make its Digital Properties Accessible ............................. 6

5.   Third-Party Content ........................................................................................ 6

6.   Accessibility Coordination Team ..................................................................... 7

7.   Accessibility Consultant and Status Report ...................................................... 7

8.   Accessibility Audit .......................................................................................... 8

9.   Accessibility Strategy ...................................................................................... 8

10.  Accessibility Statement .................................................................................... 8

11.  Accessibility Training ...................................................................................... 9

12.  Modified Bug Fix Priority ............................................................................. 10

13.  Accessibility Support ..................................................................................... 10

14.  Semi-Annual Accessibility Audit ................................................................... 11

15.  Annual End-User Accessibility Testing .......................................................... 11

16.  Agreement Term ........................................................................................... 11

17.  Monitoring of Compliance ............................................................................ 11

18.  Mondelēz Global LLC's Reporting Schedule ................................................. 12

19.  Scope of Agreement ...................................................................................... 13

20.  Incentive Award to Named Plaintiff .............................................................. 14

21.  Annual Report and Meet-and-Confers ........................................................... 14

22.  Dispute Resolution Procedure ....................................................................... 14

23.  Attorneys' Fees and Costs up to the Date of Final Approval ........................... 16

24.  Preliminary Approval, Objections, and Final Approval ................................... 16

25.    Notice ............................................................................................................... 17

26.    Judgment, Final Approval, and Dismissal ...................................................... 18

27.    No Admission of Liability ............................................................................... 18

28.    Terms Not Confidential; Non-Disparagement ................................................ 19

29.    Release ............................................................................................................. 19

30.    Entire Agreement ............................................................................................ 19

31.    Modification .................................................................................................... 19

32.    Severability ..................................................................................................... 19

33.    Drafting of this Agreement ............................................................................. 19

34.    Execution in Counterparts ............................................................................... 20

35.    Continuing Jurisdiction ................................................................................... 20

36.    Deadlines ......................................................................................................... 20

37.    Communications to Named Plaintiff, Class Counsel, the Settlement Class,
       and Mondelēz Global LLC .............................................................................. 20

<u>Settlement Agreement</u>

1.     **Introduction.** This Agreement (all capitalized terms have the meanings set forth in Section 2) is entered into by and between Mondelēz Global LLC and Blair Douglass ("Named Plaintiff"), individually and on behalf of the Settlement Class.

  1.1.   Mondelēz Global LLC, operates, and controls the Websites, which are open to consumers in the United States through the internet.

  1.2.   This Agreement applies to the Websites, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps, but not Subsequently Abandoned Websites and Mobile Apps.

  1.3.   Named Plaintiff uses screen reader auxiliary aids to access digital information and is a person with a disability as that term is used in the ADA. Named Plaintiff has attempted to patronize the Websites and intends to do so again in the future.

  1.4.   On or about June 15, 2022, Named Plaintiff filed this Lawsuit, in which Named Plaintiff asserted that Mondelēz Global LLC does not have, and has never had, adequate corporate policies and practices that are reasonably calculated to cause the Websites to be fully accessible to Blind or Visually Disabled individuals, in violation of the ADA.

  1.5.   Mondelēz Global LLC denies Named Plaintiff's allegations, further denies any allegation or implication that it discriminates against Blind or Visually Disabled consumers or any individual or group of individuals and denies that Named Plaintiff or any member of the proposed Settlement Class is entitled to damages or compensation in any form. The Parties nevertheless wish to affect a complete resolution and settlement of all claims, disputes and controversies relating to the allegations of Named Plaintiff and the Settlement Class, and to resolve their differences and disputes by settling the Lawsuit.

  1.6.   The terms of all exhibits attached hereto are fully incorporated into this Agreement and are an integral part thereof. The terms of this Agreement, where applicable, are fully incorporated into all exhibits and are, where applicable, an integral part thereof. To the extent that there are any conflicts or inconsistencies between the terms of this Agreement and any of the exhibits, the terms of the Agreement shall control.

  1.7.   This Agreement and all exhibits are binding on Mondelēz Global LLC's subsidiaries, successors and assigns.

2.    **Definitions.**

2.1.    **"Accessibility Audit"** means the initial audit of the Websites required by Section 8 of this Agreement.

2.2.    **"Accessibility Consultant"** means the person or company designated by Mondelēz Global LLC to serve the purposes of Section 7 of this Agreement.

2.3.    **"Accessibility Coordination Team"** means the team designated by Mondelēz Global LLC to serve the purposes of Section 6 of this Agreement.

2.4.    **"Accessibility Statement"** means the statement required by Section 10 of this Agreement that must demonstrate Mondelēz Global LLC's commitment to implementing accessible services to blind and visually disabled individuals.

2.5.    **"Accessibility Strategy"** means the corrective action strategy required by Section 9 of this Agreement.

2.6.    **"Accessibility Support Personnel"** means the individuals required by Section 13 of this Agreement.

2.7.    **"Accessible" or "Accessibility"** refers to digital content that provides effective communication to all users, using as a non-binding guideline the success criteria of the WCAG 2.1.

2.8.    **"ADA"** means Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12181 *et seq.*, and its implementing regulations.

2.9.    **"Agreement"** means this settlement agreement and the exhibits attached hereto.

2.10.    **"Agreement Term"** means the time from the Effective Date through the end of two (2) years from the Effective Date.

2.11.    **"Annual Report"** means the document that Mondelēz Global LLC shall submit to Class Counsel on the Effective Date's anniversary during the Agreement Term, stating the status of the implementation of the Agreement and identifying any outstanding issues on which the Parties are then in disagreement.

2.12.    **"Blind or Visually Disabled"** means, with respect to an individual, a physical impairment that substantially limits the major life activity of seeing, pursuant to the ADA, 42 U.S.C. § 12102(1)-(2).

2.13.    **"Class Counsel"** means Kevin W. Tucker and Kevin Abramowicz of East End Trial Group LLC.

2.14. **"Costs"** means all out-of-pocket expenses reasonably incurred and shall include (but not be limited to) amounts payable to experts.

2.15. **"Court"** means the United States District Court for the Western District of Pennsylvania.

2.16. **"Digital Properties"** means the Websites, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps.

2.17. **"Dispute Resolution Procedure"** means the process described in Section 22 of this Agreement.

2.18. **"Effective Date"** means the date on which all conditions precedent set forth in Section 3 of this Agreement are completed.

2.19. **"Final Approval"** means the period thirty one (31) days following approval given in a written order to this Agreement by a United States District Court Judge or Magistrate Judge of competent jurisdiction after notice to the Settlement Class and hearing, provided no appeal is filed during this period. If an appeal is filed, then Final Approval shall mean that period thirty one (31) days following the exhaustion of any and all appeal(s).

2.20. **"Injunctive Releasing Parties"** means Named Plaintiff and all Settlement Class Members, and each of their executors, successors, heirs, assigns, administrators, agents, and representatives.

2.21. **"Lawsuit"** means *Douglass v. Mondelēz Global LLC, Inc.*, Case No. 2:22-cv-00875-WSH (W.D. Pa.).

2.22. **"Letter of Reasonable Accessibility"** means the letter issued by the Accessibility Consultant, on the first anniversary of the Effective Date and every six (6) months thereafter during the Agreement Term, that confirms the Digital Properties are Accessible, explains the testing standards, and summarizes the remediation efforts Mondelēz Global LLC has taken during the Agreement Term and the policies and practices Mondelēz Global LLC has adopted to maintain the Digital Properties in an Accessible manner going forward.

2.23. **"Modified Bug Fix Priority"** means the policies required by Section 12 of this Agreement.

2.24. **"Mondelēz Global LLC"** means Mondelēz Global LLC.

2.25.  **"Mondelēz Global LLC Parties"** means Mondelēz Global LLC and its present and former parents and subsidiaries and each of their respective present, former, or future officers, directors, employees, shareholders, administrators, executors, affiliates, successors, and assigns.

2.26.  **"Mondelēz Global LLC Personnel**" means all persons who are employed by Mondelēz Global LLC and who have managerial responsibility for the design and development of the Websites, New Websites and Mobile Apps, and Subsequently Acquired Websites and Mobile Apps.

2.27.  **"Mondelēz Global LLC Settlement Contact"** means a Mondelēz Global LLC employee designated as the initial point of contact for Class Counsel and Named Plaintiff with respect to issues concerning this Agreement. Mondelēz Global LLC shall notify Class Counsel in writing of the person designated as the Mondelēz Global LLC Settlement Contact within ten (10) days of the Effective Date. Mondelēz Global LLC shall also notify Class Counsel in writing should a new individual be designated as the Mondelēz Global LLC Settlement Contact during the Agreement Term. Such notice shall be required within ten (10) days of designation of the new Mondelēz Global LLC Settlement Contact.

2.28.  **"Named Plaintiff"** means Blair Douglass.

2.29.  **"New Websites and Mobile Apps"** means any website or mobile application that Mondelēz Global LLC develops, starts to operate, and makes publicly available to consumers in the United States after the Effective Date of this Agreement.

2.30.  **"Notice Deadline"** means the deadline for publishing notice to be set by the Court as part of the Preliminary Approval process.

2.31.  **"Parties"** refers to Mondelēz Global LLC, Named Plaintiff, and the Settlement Class.

2.32.  **"Party"** refers to Mondelēz Global LLC, Named Plaintiff, or the Settlement Class.

2.33.  **"Preliminary Approval"** means the initial approval by the Court of the terms of this Agreement, which will occur before any notice being provided in accordance with this Agreement.

2.34.  **"Released Injunctive Claims"** means any and all claims, rights, demands, charges, complaints, actions, suits and causes of action, whether known or unknown, suspected or unsuspected, accrued or unaccrued, for injunctive, declaratory, or non-monetary relief, based on the Accessibility of the Digital Properties to persons who are limited in the life activity of seeing and who use screen reader auxiliary aids to

access digital information, including any injunctive, declaratory, or non-monetary claims under: (i) the ADA; and (ii) any state or local statutory, administrative, regulatory, or code provisions that either (a) directly incorporates the ADA or (b) sets forth standards or obligations coterminous with or equivalent to the ADA. The "Released Injunctive Claims" cover all conduct concerning the Accessibility of the Digital Properties through the Agreement Term.

2.35. **"Settlement Class"** or **"Settlement Class Members"** means a national class including all Blind or Visually Disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from accessing the Websites from the United States.

2.36. **"Settlement Website"** means a search-engine-optimized ("SEO") settlement website operated by a stipulated class action settlement administrator or similar entity and located at https://www.mondelezADAsettlement.com.

2.37. **"Status Report"** means a written evaluation that (a) identifies content, features, and services on the Digital Properties that are not fully and equally accessible to individuals who use screen reader auxiliary aids, and (b) recommends steps Mondelēz Global LLC must take to ensure their remediation.

2.38. **"Subsequently Abandoned Websites and Mobile Apps"** means any website or mobile application, including the Digital Properties that Mondelēz Global LLC ceases to operate or make available to consumers in the United States after the Effective Date of this Agreement.

2.39. **"Subsequently Acquired Websites and Mobile Apps"** means any website or mobile application that Mondelēz Global LLC acquires from a third party, starts to operate, and makes publicly available to consumers in the United States after the Effective Date of this Agreement.

2.40. **"Third-Party Content"** means content that is not developed or 100% owned by Mondelēz Global LLC.

2.41. **"WCAG 2.1"** means Web Content Accessibility Guidelines 2.1 level AA, including the WAI-ARIA.

2.42. **"Websites"** means the digital properties identified in Exhibit A, attached hereto.

**3.** **Conditions Precedent.** This Agreement shall be conditioned and effective only upon the occurrence of all of the following events:

3.1.   The Court grants Preliminary Approval of this Agreement, and orders certification of the Settlement Class and notice to the Settlement Class Members.

3.2.   Notice is provided to the Settlement Class in accordance with Section 25 of this Agreement.

3.3.   The Court grants Final Approval of this Agreement and enters judgment in accordance with the terms set forth herein after a final approval hearing has been conducted, and all such orders and approvals have become final and non-appealable.

4.   **Mondelēz Global LLC Shall Make Its Digital Properties Accessible.** Mondelēz Global LLC shall continue to provide Blind or Visually Disabled individuals full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Digital Properties as provided for in this Section:

4.1.   Mondelēz Global LLC shall ensure the U.S. portions of the Websites are Accessible by the end of the Agreement Term.

4.2.   Mondelēz Global LLC shall ensure the U.S. portions of any New Websites and Mobile Apps are Accessible at the time of their release.

4.3.   Mondelēz Global LLC shall ensure the U.S. portions of Subsequently Acquired Websites and Mobile Apps are Accessible within eighteen (18) months of their acquisition.

5.   **Third-Party Content.**

5.1.   Mondelēz Global LLC shall not be required to ensure websites and advertisements provided by third parties not owned, controlled, or operated by Mondelēz Global LLC are Accessible, unless such websites and advertisements are necessary for Blind or Visually Disabled individuals to complete a purchase for a Mondelēz Global LLC product, like a payment processor, or contact Mondelēz Global LLC customer service, like an instant messenger.

5.2.   After the Effective Date of this Agreement, for each new, renewed, or renegotiated contract with a vendor of Third-Party Content, Mondelēz Global LLC shall request that the vendor provide Accessible content unless doing so for the vendor will create an undue burden for Mondelēz Global LLC. If during this contracting process Mondelēz Global LLC issues a request for proposal for development or inclusion of Third-Party Content on the Digital Properties, then Mondelēz Global LLC shall include Accessibility as a criterion unless doing so will create an undue burden. For Third-Party Content that is not subject to a written contract, Mondelēz

Global LLC shall seek out such content that provides Accessibility unless doing so will create an undue burden for Mondelēz Global LLC.

5.3.    If, after following the process set forth in this Section, Mondelēz Global LLC is unable to confirm Accessible Third-Party Content, it shall advise Class Counsel, annually, consistent with Section 21.

**6.    Accessibility Coordination Team.**

6.1.    Within three (3) months of the Effective Date of this Agreement, Mondelēz Global LLC shall designate a group of employees as the Accessibility Coordination Team for the Digital Properties. Mondelēz Global LLC shall notify Class Counsel when this designation is complete.

6.2.    The Accessibility Coordination Team shall be responsible for coordinating Mondelēz Global LLC's compliance with Sections 4 through 15 of this Agreement.

6.3.    Mondelēz Global LLC shall maintain the Accessibility Coordination Team through at least the Agreement Term.

**7.    Accessibility Consultant and Status Report.**

7.1.    Within six (6) months of the Effective Date of this Agreement, Mondelēz Global LLC shall appoint or retain an Accessibility Consultant knowledgeable about digital accessibility, the ADA, and Accessibility. Mondelēz Global LLC shall inform Class Counsel of its selection of the Accessibility Consultant. Should Class Counsel object to Mondelēz Global LLC's selection, the Parties will work in good faith to resolve such objection pursuant to the Dispute Resolution Procedure in Section 22.

7.2.    The Accessibility Consultant's duties shall include: (a) assisting Mondelēz Global LLC to conduct an Accessibility Audit of the Websites; (b) advising Mondelēz Global LLC as to how to make the Websites Accessible; (c) verifying that the Digital Properties are Accessible, in the Letter of Reasonable Accessibility; and (d) verifying Mondelēz Global LLC's compliance with Section 5.

7.3.    Before each anniversary date of the Effective Date of this Agreement, the Accessibility Consultant shall provide Mondelēz Global LLC with a Status Report. In the Status Report, the Accessibility Consultant shall: (a) identify content, features, and services on the Digital Properties that are not Accessible to individuals who use screen reader auxiliary aids; and (b) recommend steps Mondelēz Global LLC must take to ensure the Accessibility of the Digital Properties.

7.4.    Mondelēz Global LLC shall include copies of the Letter of Reasonable Accessibility and the Status Report as exhibits to the Annual Report provided to Class Counsel on the anniversary of the Effective Date during the Agreement Term.

7.5.    Within three (3) months of any change, Mondelēz Global LLC shall notify Class Counsel if it appoints or retains a new Accessibility Consultant during the Agreement Term.

## 8.    Accessibility Audit.

8.1.    Within nine (9) months of the Effective Date of this Agreement, Mondelēz Global LLC shall complete the Accessibility Audit.

8.2.    The Accessibility Audit shall be conducted in a professional manner and shall be benchmarked by appropriate processes, including automated and end-user testing, consistent with the Accessibility Consultant's recommendations.

8.3.    Mondelēz Global LLC shall provide a copy of the Accessibility Audit as an exhibit to the Annual Report due to Class Counsel on the first anniversary of the Effective Date.

## 9.    Accessibility Strategy.

9.1.    Within eighteen (18) months of the Effective Date of this Agreement, Mondelēz Global LLC shall develop and implement an Accessibility Strategy designed to ensure the Digital Properties are Accessible.

9.2.    Mondelēz Global LLC shall consider this Agreement, the Accessibility Audit, the Accessibility Statement, and the recommendations and Status Reports of the Accessibility Consultant when implementing the Accessibility Strategy.

9.3.    Within eighteen (18) months of the Effective Date of this Agreement, Mondelēz Global LLC shall provide a copy of the Accessibility Strategy to Class Counsel.

9.4.    Within eighteen (18) months of the Effective Date of this Agreement, Mondelēz Global LLC shall disseminate the Accessibility Strategy among Mondelēz Global LLC Personnel.

## 10.    Accessibility Statement.

10.1.   Within nine (9) months of the Effective Date of this Agreement, Mondelēz Global LLC shall develop the Accessibility Statement.

10.2.    The Accessibility Statement shall, at minimum: (a) state that Mondelēz Global LLC is making efforts to maintain and increase access to the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Digital Properties; (b) solicit feedback from visitors to Mondelēz Global LLC's Digital Properties on how the accessibility of these properties can be improved; and (c) include an Accessible means of submitting Accessibility questions and problems, including a toll-free telephone number and an email address to provide feedback about the Accessibility Statement and the Digital Properties.

10.3.    Within nine (9) months of the Effective Date of this Agreement, Mondelēz Global LLC shall provide a copy of the Accessibility Statement to Class Counsel.

10.4.    Within twelve (12) months of the Effective Date of this Agreement, Mondelēz Global LLC shall post the Accessibility Statement on the Websites.

10.5.    Within eighteen (18) months of the Effective Date of this Agreement, Mondelēz Global LLC shall add an invisible link at the beginning of the Websites to direct consumers using screen readers to the Accessibility Statement located in the footer of the Websites' homepages.

10.6.    Mondelēz Global LLC shall include an invisible link at the beginning of the homepage of any New Websites and Mobile Apps at the time of their release, directing consumers using screen readers to the Accessibility Statement located in the footer of the Websites' homepages.

10.7.    Within six (6) months of their acquisition, Mondelēz Global LLC shall add an invisible link at the beginning of the homepages of any Subsequently Acquired Websites and Mobiles Apps, directing consumers using screen readers to the Accessibility Statement located in the footer of the Websites' homepages.

10.8.    The Annual Report shall state the status of the implementation of Section 10.

**11.    Accessibility Training.**

11.1.    Within eighteen (18) months of the Effective Date of this Agreement, Mondelēz Global LLC shall train all employees responsible for website and mobile application design, development, and maintenance to ensure future design, development, and maintenance of the Digital Properties are and remain Accessible.

11.2.    To the extent Mondelēz Global LLC has already provided Accessibility training to all current employees responsible for website and mobile application design, development, and maintenance, then Mondelēz Global LLC shall provide refresher

Accessibility training to those employees within eighteen (18) months of the Effective Date of this Agreement.

11.3.   Mondelēz Global LLC shall provide accessibility training to all newly-hired employees responsible for website and mobile application design, development, and maintenance within 180 days of their hire date.

11.4.   Mondelēz Global LLC shall provide refresher accessibility training to employees responsible for website and mobile application design, development, and maintenance on an annual basis commencing in 2023.

11.5.   During the Agreement Term and consistent with the annual reporting requirements set forth in Section 21, below, Mondelez Global LLC shall provide copies of Accessibility training material to Class Counsel.

**12.     Modified Bug Fix Priority.**

12.1.   Within eighteen (18) months of the Effective Date of this Agreement, Mondelēz Global LLC shall make reasonable efforts to modify existing bug fix policies, practices, and procedures to include the elimination of bugs that create Accessibility barriers, including those that prohibit effective communication or impair Accessibility of the Digital Properties.

12.2.   Mondelēz Global LLC shall ensure that any bugs that create accessibility barriers to the Digital Properties are remedied with the same level of priority (*e.g.*, speed, resources used to remediate) as any other equivalent loss of function for individuals without disabilities.

**13.     Accessibility Support.**

13.1.   Within eighteen (18) months of the Effective Date of this Agreement, Mondelēz Global LLC shall provide support through Accessibility Support Personnel during regular business hours to help Blind or Visually Disabled individuals resolve Accessibility issues encountered while using the Digital Properties. Mondelēz Global LLC shall train the Accessibility Coordination Team to review, handle, or escalate accessibility related questions and comments generated by the toll-free telephone number and email address published in the Accessibility Statement of the Websites.

13.2.   Should any complaint or issue that concerns or relates to compliance with the terms of this Agreement be made through the Accessibility Support Personnel, said complaint or issue shall be forwarded to the Accessibility Coordination Team, who then shall coordinate internally to make sure any reported nonconformance by a

Blind or Visually Disabled individual is fixed as soon as possible but no later than one hundred and twenty (120) days after it was reported to the Accessibility Coordination Team.

13.3.    The Mondelēz Global LLC Settlement Contact shall forward the complaint or issue to Class Counsel as part of Mondelēz Global LLC's Annual Report or semi-annual Letter of Reasonable Accessibility, whichever is next due following the date Mondelēz Global LLC received the complaint or issue. To the extent any such complaint or issue is not resolved, it shall be subject to the Dispute Resolution Procedure.

**14.    Semi-Annual Accessibility Audit.**

14.1.    During the Agreement Term, Mondelēz Global LLC, or a consultant retained on its behalf, shall perform an automated accessibility audit semi-annually to evaluate whether the Digital Properties are Accessible.

14.2.    The Mondelēz Global LLC Settlement Contact shall forward the results of the semi-annual automated accessibility audit to Class Counsel as part of Mondelēz Global LLC's Annual Report or semi-annual Letter of Reasonable Accessibility, whichever is next due following the date Mondelēz Global LLC completed the semi-annual automated accessibility audit.

**15.    Annual End-User Accessibility Testing.**

15.1.    During the Agreement Term, the Accessibility Consultant shall perform annual end-user accessibility testing, with said testing to be performed by individuals who are Blind or Visually Disabled, or who have training and experience in the manner in which Blind or Visually Disabled individuals use a screen reader to navigate, browse, and conduct business online, to evaluate whether the Digital Properties are Accessible.

15.2.    The Mondelēz Global LLC Settlement Contact shall forward the results of the annual end-user accessibility testing to Class Counsel as part of Mondelēz Global LLC's Annual Report or semi-annual Letter of Reasonable Accessibility, whichever is next due following the date Mondelēz Global LLC completed the annual end-user accessibility testing.

**16.    Agreement Term.** The Agreement Term shall be two (2) years from the Effective Date.

**17.    Monitoring of Compliance.** Class Counsel and Named Plaintiff shall monitor Mondelēz Global LLC's compliance with Sections 4 through 15 as more fully described in this paragraph.

17.1.   Class Counsel and Named Plaintiff shall be entitled to visit the Digital Properties at any time without notice for the purpose of evaluating Mondelēz Global LLC's compliance with Sections 4 through 15.

17.2.   Mondelēz Global LLC shall include in the Annual Report copies of the Accessibility related questions and comments generated by the toll-free telephone number, and email address published in the Accessibility Statement of the Websites, or generated or received in any other manner or through any other medium.

18.   **Mondelēz Global LLC's Reporting Schedule.** Mondelēz Global LLC shall provide the following information to Class Counsel during the Agreement Term.

| Information | Deadline | See Agreement at Section |
|---|---|---|
| Annual Report | The Effective Date's anniversary date during the Agreement Term | 2.11, 21.1 |
| The Accessibility Consultant's Letter of Reasonable Accessibility | To be included as an exhibit to the Annual Report | 2.22, 7.4 |
| Third-Party Content that Mondelēz Global LLC cannot confirm is Accessible | To be included in the Annual Report | 5.3 |
| Confirmation that Mondelēz Global LLC has designated the Accessibility Coordination Team | 3 months of the Effective Date | 6.1 |
| Confirmation that Mondelēz Global LLC has appointed or retained an Accessibility Consultant | 6 months of the Effective Date | 7.1 |
| The Accessibility Consultant's Status Report | To be included as an exhibit to the Annual Report | 7.4 |
| Changes to the Accessibility Consultant | 3 months of the change | 7.5 |

| Accessibility Audit | To be included as an exhibit to the Annual Report due on the first anniversary of the Effective Date | 8.3 |
|---|---|---|
| Accessibility Strategy | 18 months of the Effective Date | 9.3 |
| Accessibility Statement | 9 months of the Effective Date | 10.3 |
| Status of Accessibility Statement | To be included in the Annual Report | 10.8 |
| Accessibility training material | To be included in the Annual Report | 11.5 |
| Complaints received by Mondelēz Global LLC's accessibility support personnel regarding the Digital Properties' accessibility | To be included in the Annual Report or Letter of Reasonable Accessibility, whichever is next due | 13.3 |
| The results of Mondelēz Global LLC's semi-annual accessibility audit | To be included in the Annual Report or Letter of Reasonable Accessibility, whichever is next due | 14.2 |
| Annual end-user accessibility testing results | To be included in the Annual Report or Letter of Reasonable Accessibility, whichever is next due | 15.2 |
| Copies of accessibility-related questions and comments received by Mondelēz Global LLC | To be included in the Annual Report | 17.2 |

19. **Scope of Agreement.**

19.1.   The provisions of this Agreement shall apply to Mondelēz Global LLC's policies, practices, and procedures with respect to Blind or Visually Disabled individuals within the United States who use screen reader auxiliary aids to access the Digital Properties. The data that Mondelēz Global LLC periodically reports to Class

Counsel pursuant to this Agreement shall contain relevant information for these consumers.

19.2.   The provisions of this Agreement shall not apply to Subsequently Abandoned Websites and Mobile Apps.

19.3.   Named Plaintiff expressly agrees that the resolution described herein is fair and adequate, and that the policies and procedures set forth in this Agreement are intended to remedy any and all alleged violations of the ADA and related state and local laws by Mondelēz Global LLC with respect to the claims alleged by Named Plaintiff in this case.

## 20.   Incentive Award to Named Plaintiff.

20.1.   Subject to Court approval, Mondelēz Global LLC shall pay Named Plaintiff an incentive award in the amount of One Thousand Five Hundred Dollars and Zero Cents ($1,500.00).

20.2.   Named Plaintiff waives any right to an incentive award in connection with this matter which exceeds the amount provided in Section 20.1.

20.3.   Mondelēz Global LLC shall pay the amount provided in Section 20.1, or One Thousand Five Hundred Dollars and Zero Cents ($1,500.00), within forty-five (45) days of the Effective Date by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group, LLC, at an address or account to be confirmed by Class Counsel before payment.

20.4.   The incentive award shall not be subject to withholding deductions and Mondelēz Global LLC may issue an IRS Form 1099 to Named Plaintiff, through Class Counsel at the address provided in Section 37.1.

## 21.   Annual Report and Meet-and-Confers.

21.1.   During the Agreement Term, on the Effective Date's anniversary, Mondelēz Global LLC shall submit a report to Class Counsel, stating the status of the implementation of this Agreement and identifying any outstanding issues on which the Parties are then in disagreement.

21.2.   At Class Counsel's written request, Class Counsel and Mondelēz Global LLC or its counsel will meet to discuss the Annual Report and review the implementation of this Agreement. Such meetings may be either in person or by telephone, as the Parties agree.

22.    **Dispute Resolution Procedure.** The Parties shall address disputes relating to any of the provisions of this Agreement as follows.

22.1.    Informal Dispute Resolution.

22.1.1.    If either Party believes that a dispute exists relating to any section of this Agreement, it shall notify the other Party in writing, describing the dispute. The other Party shall respond in writing to such notice within fifteen (15) business days of receipt of the notice.

22.1.2.    If a Settlement Class Member believes a dispute exists relating to any section of this Agreement, she may notify Class Counsel who, in turn, shall notify Mondelēz Global LLC in writing, describing the dispute. Mondelēz Global LLC shall respond in writing to such notice within fifteen (15) business days of receipt of the notice.

22.1.3.    Further, if Mondelēz Global LLC is informed of a dispute relating to the provisions of this Agreement by a Settlement Class Member, Mondelēz Global LLC shall notify Class Counsel in writing, describing the dispute and providing the Settlement Class Member's contact information, if known. Mondelēz Global LLC shall respond to the dispute in writing within fifteen (15) business days of receipt of the notice. The response shall be directed to Class Counsel.

22.1.4.    Within fifteen (15) business days of receipt of the response described in Section 22.1.1, 22.1.2, or 22.1.3, counsel for both Parties shall meet and confer by telephone or in person and attempt to resolve the issue informally. The Parties may agree to enter mediation on the issue in dispute.

22.1.5.    Mondelēz Global LLC shall be responsible for all reasonable attorneys' fees and Costs incurred by Class Counsel and Named Plaintiff in pursuing informal dispute resolution of a nonfrivolous claim pursuant to this Section 22.1.

22.2.    Submission to Mediation.

22.2.1.    In the event that the Parties are unable to resolve their dispute through such meet-and-confer negotiations, then within forty-five (45) days of receipt of the letter raising the dispute, the dispute shall be submitted to mediation before a mutually-agreed upon mediator in Pittsburgh, Pennsylvania or such other location as may be

mutually agreed between the parties. The mediation may be conducted electronically. Mondelēz Global LLC shall pay the cost of the mediation. If Mondelēz Global LLC declines to pay such costs, Named Plaintiff may submit the dispute to the Court.

22.3.    Submission to the Court.

22.3.1.    If the meet-and-confer process and mediation pursuant to Sections 22.1 and 22.2 do not result in a resolution of the dispute within a reasonable time, any Party may make a motion for resolution of the dispute by Judge W. Scott Hardy or any other United States District Court Judge or Magistrate Judge who may be assigned to the case.

22.3.2.    In the event either Party finds that it is necessary to seek resolution of the dispute by the Court, the Court shall award reasonable attorneys' fees and costs incurred in pursuing dispute resolution as set forth in Section 22.3 in accordance with the prevailing party standards under the ADA.

## 23.    Attorneys' Fees and Costs up to the Date of Final Approval.

23.1.    Subject to Court approval, Mondelēz Global LLC shall pay Named Plaintiff's reasonable attorneys' fees and Costs incurred in connection with this matter in an amount not to exceed Seventy-Three Thousand Five Hundred Dollars and Zero Cents ($73,500.00) or such lesser amount as may be awarded by the Court. Class Counsel shall provide Mondelēz Global LLC with a current W-9 and any further documentation or information necessary to allow it to meet its payment obligations herein.

23.2.    Named Plaintiff waives any right to reasonable attorneys' fees and Costs incurred in connection with this matter up to and including the Effective Date of this Agreement which exceed the amount provided in Section 23.1.

23.3.    Mondelēz Global LLC shall pay the amount provided in Section 23.1 within forty-five (45) days following Final Approval. Mondelēz Global LLC shall make such payment by sending a business check or wire transfer payable to "EAST END TRIAL GROUP LLC IOLTA ATTORNEY TRUST ACCOUNT" to Class Counsel in care of Kevin W. Tucker, East End Trial Group, LLC, at an address or account to be confirmed by Class Counsel before payment.

## 24.    Preliminary Approval, Objections, and Final Approval.

24.1.    Promptly after execution of this Agreement, Named Plaintiff shall request that the

Court schedule a preliminary approval hearing within fourteen (14) days of the request or as soon thereafter as the Court may set the hearing and that the Court preliminarily approve the Agreement, preliminarily enjoin Settlement Class Members from bringing any claims to be released pursuant to this Agreement, and approve the proposed form of Notice and plan for providing notice submitted by the Parties.

24.2.  Named Plaintiff shall ask the Court to schedule a fairness and final approval hearing no less than ninety (90) days after the Notice Deadline set by the Court, or as soon thereafter as the Court may set the hearing.

24.3.  Named Plaintiff shall ask the Court to order Named Plaintiff to file a Motion for Reasonable Attorney's Fees and Costs within forty-five (45) days after the Notice Deadline set by the Court.

24.4.  Named Plaintiff shall ask the Court to order the following procedures for objections: Any Settlement Class Member may object to the proposed Agreement by filing, within sixty (60) days after the Notice Deadline set by the Court, written objections with the Clerk of the Court. Only such objecting Settlement Class Members shall have the right, and only if they expressly seek it in their objection, to present objections orally at the Fairness Hearing. Responses to any timely-filed objections shall be made no less than five (5) days before the Fairness Hearing.

## 25.  Notice.

25.1.  As soon as practicable, but no later than twenty-one (21) days after the Court's entry of a Preliminary Approval Order, Mondelēz Global LLC shall, at its expense:

25.1.1. Cause the Long-Form Notice accompanying this Agreement as Exhibit B to be published on, and make the following documents filed in the Lawsuit available for download on, the Settlement Website: the class action complaint, motion for preliminary approval of class action settlement and supporting documents, and the Court's orders concerning preliminary approval as well as any supporting memorandum. The Settlement Website and the documents identified in this Section shall be fully accessible by individuals who screen reader auxiliary aids.

25.1.2. Request that the following organizations publish notice in the form of Section 25.1.3 in their respective electronic newsletters so the notice is sent out within sixty (60) days of Preliminary Approval. Mondelēz Global LLC shall copy Class Counsel on each request at the addresses provided in Section 38.1.

17

> (1)    Achieva,
> (2)    American Council of the Blind,
> (3)    American Foundation for the Blind,
> (4)    Blinded American Veterans Foundation,
> (5)    Blinded Veterans Association,
> (6)    Foundation Fighting Blindness,
> (7)    Guide Dogs for the Blind,
> (8)    National Association of Blind Merchants,
> (9)    National Council on Disability, and
> (10)   National Federation of the Blind.

25.1.3. "A proposed settlement has been reached that would resolve the class action lawsuit *Douglass v. Mondelēz Global LLC*, No. 2:22-cv-00875-WSH (W.D. Pa.). The lawsuit alleges that Mondelēz Global LLC violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.* by failing to take the necessary steps to ensure its websites do not discriminate against blind or visually disabled consumers who use screen reader auxiliary aids to access digital content. Mondelēz Global LLC denies the allegations in the lawsuit that it has violated the ADA and denies any allegation or implication that it discriminates against blind or visually disabled consumers or any individual or group of individuals. Under the settlement, Mondelēz Global LLC agrees to take additional steps to make its websites, mobile apps, and any new website or mobile app it develops or acquires accessible to screen reader users.

25.1.4. For a more complete summary of the terms of the proposed settlement, please visit: https://www.mondelezADAsettlement.com."

25.2.    As soon as practicable, but no later than seven (7) days after they are filed, Mondelēz Global LLC shall make any motion for attorneys' fees and costs, and supporting documentation, as well as any order granting or denying any motion for attorneys' fees and costs, available for download on the Settlement Website.

**26.    Judgment, Final Approval, and Dismissal.**

26.1.    Class Counsel and Named Plaintiff shall request that the Court enter a Final Judgment and Order granting Final Approval of this Agreement and enjoining Settlement Class Members from asserting any Released Injunctive Claims. Among other things, the Final Judgment and Order granting Final Approval of this Agreement shall attach this Agreement as an exhibit and shall provide that the Court retains jurisdiction through the Agreement Term in order to enforce this Agreement.

26.2.  This Lawsuit shall be dismissed with prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure, no later than thirty (30) days following the expiration of the Agreement Term. Pursuant to *Kokkonen v. Guardian Life Ins. Co. of Am*., 511 U.S. 375 (1994), the Parties shall jointly request that the Court's dismissal order expressly retain the Court's jurisdiction to enforce this Agreement against Named Plaintiff, Mondelēz Global LLC, and Settlement Class Members

27.  **No Admission of Liability.** By agreeing to and voluntarily entering into this Agreement, there is no admission or concession by Mondelēz Global LLC, direct or indirect, express or implied, that the Websites are in any way inaccessible or that Mondelēz Global LLC has violated the ADA, or any other federal, state, or local law, code, regulation, order, or rule. Mondelēz Global LLC further denies any allegation or implication that it discriminates against Blind or Visually Disabled consumers or any individual or group of individuals. Nothing in this Agreement shall operate as an admission by Mondelēz Global LLC in any context other than within the settlement of this Lawsuit that any particular standard or standards are applicable under the ADA or any other federal or state law to the Websites.

28.  **Terms Not Confidential; Non-Disparagement.**

28.1.  The terms of this Agreement are not confidential and will be publicly filed into the Court record of the Lawsuit.

28.2.  The Parties and their respective counsel, agents, and representatives agree not to make any disparaging remarks about the other Party relating to this Agreement and the negotiations leading up to it.

29.  **Release.** Effective on the date of Final Approval, the Injunctive Releasing Parties unconditionally and forever fully and finally release, acquit, and discharge the Mondelēz Global LLC Parties from the Released Injunctive Claims. Pursuant to this release, Named Plaintiff and Settlement Class Members shall not bring any claims concerning the Accessibility of the Digital Properties during the Agreement Term. Notwithstanding this release, Named Plaintiff and Settlement Class Members may fully utilize the Dispute Resolution Procedure during the Agreement Term.

30.  **Entire Agreement.** This Agreement contains all the agreements, conditions, promises, and covenants among Mondelēz Global LLC, Named Plaintiff, Class Counsel, and the Settlement Class regarding matters set forth in it and supersedes all prior or contemporaneous agreements, drafts, representations or understandings, either written or oral, with respect to the subject matter of the present Agreement.

31.  **Modification.** Prior to Final Approval, this Agreement can only be amended by written agreement of the Parties hereto. Following Final Approval, no modification of this

Agreement shall be effective unless it is pursuant to Court Order.

32. **Severability.** If any provision or any part of this Agreement thereof shall at any time be held unlawful, or inconsistent with applicable law, in whole or in part, under any federal, state, county, municipal or other law, ruling, or regulation, then the remaining provisions of this Agreement shall remain effective and enforceable.

33. **Drafting of this Agreement.** This Agreement is deemed to have been drafted by all Parties hereto, as a result of arm's length negotiations among the Parties. Whereas all Parties have contributed to the preparation of this Agreement, it shall not be construed more strictly against one Party than another.

34. **Execution in Counterparts.** The Parties may execute this Agreement in counterparts, each of which shall constitute an original for all purposes, including any copies of same, and all duplicate counterparts will be construed together and constitute one agreement. The Parties will be bound by signatures on this document which are transmitted by mail, hand delivery, facsimile, email or any other electronic means to the other Party or, if applicable, counsel of record for the other Party. Such signature will have the same binding effect as any original signature. A typed electronic signature will have the same effect as a handwritten signature.

35. **Continuing Jurisdiction.** The Parties agree that the United States District Court for the Western District of Pennsylvania shall have continuing jurisdiction throughout the Agreement Term to interpret and enforce this Agreement.

36. **Deadlines.** The Parties and the Court recognize that from time-to-time unforeseen events, such as exigent business circumstances, labor disputes, natural disasters, personnel issues, pandemics, and negotiations with third parties, cause delays in the accomplishment of objectives no matter how well intentioned and diligent the Parties may be. Accordingly, with regard to the provisions of this Agreement that require that certain acts be taken within specified periods, the Parties understand and agree that Court approval shall not be required for reasonable extensions of deadlines. In the event that any Party determines that an action required by this Agreement cannot be taken within the specified time period, that Party shall promptly notify the other Parties that it anticipates a delay, the reasons for the delay and a proposed alternative deadline. The Parties shall endeavor to cooperate in reasonably rescheduling such deadlines. However, if the other Party does not agree to the proposed delay, the Parties shall submit the matter to the Dispute Resolution Procedure.

37. **Communications to Named Plaintiff, Class Counsel, the Settlement Class, and Mondelēz Global LLC.** All letters, notices, IRS Form 1099s, requests, demands and other communications required or permitted to be given to the Parties pursuant to this Agreement shall be in writing, provided by electronic mail, facsimile, and/or next-day express delivery

service and addressed as follows:

37.1.  To Named Plaintiff, Class Counsel, or the Settlement Class:

      Kevin W. Tucker (He/Him)
      Kevin Abramowicz (He/Him)
      EAST END TRIAL GROUP LLC
      6901 Lynn Way, Suite 215
      Pittsburgh, PA 15208
      ktucker@eastendtrialgroup.com
      kabramowicz@eastendtrialgroup.com
      Tel. (412) 877-5220

37.2.  To Mondelēz Global LLC:

      Lewis S. Wiener
      EVERSHEDS SUTHERLAND, LLC
      700 Sixth Street, N.W., Suite 700
      Washington, DC 20001
      lewiswiener@eversheds-sutherland.com
      Tel. (202) 383-0140
      Fax. (202) 637-3593

      Mondelēz Global LLC may change the individuals to whom notices and communications required by this Agreement shall be sent by providing Class Counsel with written notification that it wishes to do so.

*Signature block begins on the next page.*

THE PARTIES EXECUTING THIS AGREEMENT BELOW INDIVIDUALLY ACKNOWLEDGE THAT EACH: HAS READ THIS AGREEMENT; UNDERSTANDS, ACCEPTS, AND AGREES TO ALL OF THE TERMS AND CONDITIONS OF THIS AGREEMENT; AND EXECUTES THIS AGREEMENT VOLUNTARILY, WITH FULL UNDERSTANDING OF ITS CONSEQUENCES, AND WITHOUT DURESS OF ANY KIND.

**BLAIR DOUGLASS**

DATED: Nov 10, 2022            By: *Blair Douglass*
Blair Douglass (Nov 10, 2022 21:10 EST)

**MONDELĒZ GLOBAL LLC**

DATED: November 8, 2022            By: _____

Its: Director, Consumer Care & Marketing Solutions

**APPROVED AS TO FORM AND CONTENT:**

EAST END TRIAL GROUP LLC            EVERSHEDS SUTHERLAND, LLC

By: _____            By: _____

Kevin W. Tucker (He/Him)            Lewis S. Wiener
Kevin Abramowicz (He/Him)            Eversheds Sutherland, LLC
6901 Lynn Way, Suite 215            700 Sixth Street, N.W., Suite 700
Pittsburgh, PA 15208            Washington, DC 20001

Counsel for Named Plaintiff            Counsel for Mondelēz Global LLC
and the Settlement Class

22

**EXHIBIT A**

us.greenandblacks.com

www.belvitabreakfast.com

www.capaofruit.com

www.createatreat.com

www.dentyne.com

www.dirtkitchensnacks.com

www.discoverteddy.com

www.enjoylifefoods.com

www.gethalls.com

www.giveandgo.com

www.goodthins.com

www.hukitchen.com

www.kimberleysbakeshoppe.com

www.masonstbakehouse.com

www.mdlzcusthelp.com

www.milliegram.com

www.mondelezinternational.com

www.oreo.com

www.perfectsnacks.com

www.ritzcrackers.com

www.ruckusandcosnacks.com

www.snackworks.com

www.sourpatchkids.com

www.tatesbakeshop.com

www.theworthycrumb.com

www.tridentgum.com

www.triscuit.com

www.unclewallys.com

www.wheatthins.com

**EXHIBIT B**

**NOTICE OF PROPOSED SETTLEMENT OF CLASS ACTION LAWSUIT**

**IF YOU ARE A SCREEN READER USER, YOUR LEGAL RIGHTS MAY BE AFFECTED. PLEASE READ THIS NOTICE AND THE INSTRUCTIONS CAREFULLY**

- This notice is to inform you about the proposed settlement that would resolve the class action lawsuit *Douglass v. Mondelēz Global LLC*, No. 2:22-cv-00875-WSH (W.D. Pa.).

- The settlement covers all blind or visually impaired individuals who use screen reader auxiliary aids and who have accessed, attempted to access, been deterred from accessing, will access, will attempt to access, or will be deterred from accessing any of the following websites: us.greenandblacks.com, www.belvitabreakfast.com, www.capaofruit.com, www.createatreat.com, www.dentyne.com, www.dirtkitchensnacks.com, www.discoverteddy.com, www.enjoylifefoods.com, www.gethalls.com, www.giveandgo.com, www.goodthins.com, www.hukitchen.com, www.kimberleysbakeshoppe.com, www.masonstbakehouse.com, www.mdlzcusthelp.com, www.milliegram.com, www.mondelezinternational.com, www.oreo.com, www.perfectsnacks.com, www.ritzcrackers.com, www.ruckusandcosnacks.com, www.snackworks.com, www.sourpatchkids.com, www.tatesbakeshop.com, www.theworthycrumb.com www.tridentgum.com, www.triscuit.com, www.unclewallys.com, and www.wheatthins.com (referred to hereafter as "Websites").

- The class action lawsuit alleges that Mondelēz Global LLC violated the Americans with Disabilities Act, 42 U.S.C. §§ 12101, *et seq.*, by failing to take the necessary steps to ensure its Websites do not discriminate against blind or visually disabled consumers who use screen reader auxiliary aids to access digital content.

- Mondelēz Global LLC denies all liability in the case and asserts that its current practices do not violate applicable federal, state, and local law.

- The settlement, which must be approved by the Court, would resolve the lawsuit.

- Mondelēz Global LLC has agreed to use the Web Content Accessibility Guidelines 2.1 ("WCAG 2.1") to ensure its Websites and mobile applications (referred to hereafter as "Digital Properties") effectively communicate to all users, and to follow certain steps to ensure that its Digital Properties continue to do so in the future.

- You have the right to object to the settlement by _____.

- The Court will hold a final hearing to determine whether to approve the settlement on _____.

- Your legal rights are affected whether or not you act. Please read this Notice carefully.

## I.  WHAT IS THIS LAWSUIT ABOUT?

This case is a class action lawsuit. In a class action, one or more people sue on behalf of others who have similar claims. The person that sues is the class representative. All of the people who have similar claims are part of a "class." Individual class members do not file lawsuits. Instead, a court resolves all of their claims at once.

This case is a class action that challenges the accessibility of Mondelēz Global LLC 's Websites. Plaintiff alleged the Websites are not accessible to persons with vision disabilities that use screen readers to access the internet. Plaintiff alleged that this violated the Americans with Disabilities Act. Plaintiff sought an order to require Mondelēz Global LLC to make its Websites accessible to screen reader users.

## II.  WHO DOES THIS SETTLEMENT AFFECT?

This settlement covers all blind or visually disabled individuals who use screen reader auxiliary aids to navigate digital content and who have accessed, attempted to access, or been deterred from attempting to access, or who will access, attempt to access, or be deterred from attempting to access the Websites from the United States.

## III. WHAT DOES THE SETTLEMENT PROVIDE?

### A.    Mondelēz Global LLC Will Make Its Digital Properties Accessible.

Under the settlement, Mondelēz Global LLC has agreed to use WCAG 2.1 to ensure the Digital Properties effectively communicate to consumers who use screen reader auxiliary aids (referred to hereafter as "Screen Reader Users"), and to follow certain steps to ensure the Digital Properties continue to do so in the future.

### B.    Mondelēz Global LLC Will Institute Accessibility Procedures To Ensure Accessibility.

Mondelēz Global LLC will also incorporate detailed steps into its accessibility policies and practices to ensure its Digital Properties become and remain accessible to Screen Reader Users.

1.    For each new, renewed, or renegotiated contract with a vendor of third-party content, Mondelēz Global LLC shall request that the vendor provide content that effectively communicates to Screen Reader Users unless doing so for the vendor

will create an undue burden for Mondelēz Global LLC. If during this contracting process Mondelēz Global LLC issues a request for proposal for development or inclusion of third-party content on the Digital Properties, then Mondelēz Global LLC shall include as a criterion that the content effectively communicates to Screen Reader Users unless doing so will create an undue burden.

2.   Mondelēz Global LLC shall designate a group of employees as the Accessibility Coordination Team tasked to ensure Mondelēz Global LLC complies with the settlement.

3.   Mondelēz Global LLC shall appoint or retain an Accessibility Consultant knowledgeable about digital accessibility and the ADA. The Accessibility Consultant's duties shall include, among other things: (a) assisting Mondelēz Global LLC to conduct an accessibility audit of the Websites; (b) advising Mondelēz Global LLC as to how to ensure the Websites effectively communicate to Screen Reader Users; (c) verifying that the Digital Properties effectively communicate to Screen Reader Users, and (d) verifying Mondelēz Global LLC's compliance with the settlement.

4.   Mondelēz Global LLC shall complete an accessibility audit of the Websites. The audit shall be conducted in a professional manner and benchmarked by appropriate processes, including automated and end-user testing, consistent with the accessibility consultant's recommendations.

5.   Mondelēz Global LLC shall develop and implement a strategy designed to ensure the Digital Properties effectively communicate to Screen Reader Users.

6.   Mondelēz Global LLC shall develop the accessibility statement that (a) states that Mondelēz Global LLC is making efforts to maintain and increase access to the goods, services, facilities, privileges, advantages, and accommodations provided by and through the Digital Properties; (b) solicit feedback from visitors to Mondelēz Global LLC's Digital Properties on how the accessibility of these properties can be improved; and (c) include an accessible means of submitting accessibility questions and problems, including a toll-free telephone number and an email address to provide feedback about the accessibility statement and the Digital Properties.

7.   Mondelēz Global LLC shall train all employees responsible for website and mobile application design, development, and maintenance to ensure the Digital Properties continue to effectively communicate with Screen Reader Users.

8.   Mondelēz Global LLC shall make reasonable efforts to modify existing bug fix

policies, practices, and procedures to include the elimination of bugs that create accessibility barriers, including those that prohibit effective communication.

9.      Mondelēz Global LLC shall provide support during regular business hours to help Screen Reader Users resolve accessibility issues encountered while using the Digital Properties.

10.     Mondelēz Global LLC, or a consultant retained on its behalf, shall perform an automated accessibility audit semi-annually to evaluate whether the Digital Properties effectively communicate to Screen Reader Users.

11.     The Accessibility Consultant shall perform annual end-user accessibility testing, with said testing to be performed by individuals who are blind or visually disabled, or who have training and experience in the manner in which blind or visually disabled individuals use a screen reader to navigate, browse, and conduct business online, to evaluate whether the Digital Properties effectively communicate to Screen Reader Users.

**C.      Mondelēz Global LLC Will Create A Dispute Resolution Procedure To Address Accessibility Issues.**

Additionally, Mondelēz Global LLC will forward any complaint or issue raised to its customer services regarding the accessibility of its Digital Properties to Class Counsel (defined below), who shall work with Mondelēz Global LLC to ensure the issue is resolved consistent with the proposed settlement. Class Counsel will monitor Mondelēz Global LLC 's compliance with the settlement as well.

**D.      Mondelēz Global LLC Will Pay Class Co-Counsel's Attorneys' Fees And Costs.**

The settlement also provides that the named individual plaintiff who served as class representative will receive a $1,500.00 incentive award, subject to court approval, in return for a release of his individual claims.

Finally, East End Trial Group LLC ("Class Counsel"), the attorneys who represent the class, will have the right to seek attorneys' fees and costs up to (a) $73,500.00 for work performed up to Mondelēz Global LLC 's deadline to makes its Digital Properties effectively communicate to Screen Reader Users. Class Counsel will file a motion asking the Court to award reasonable fees and costs to reimburse them for work they performed on this case. The Court must approve the amount awarded even if the parties reach an agreement on the amount. This motion for fees and costs will be available at https://www.MondelezADAsettlement.com after it is filed with the Court.

### IV. DOES THE SETTLEMENT AFFECT MY LEGAL RIGHTS?

All class members will be bound by the terms of the settlement relating to access to the Digital Properties for blind or visually disabled persons who use screen reader auxiliary aids to access digital content, if the settlement agreement is approved by the Court. If the settlement is approved, all class members will release and forever discharge all claims for injunctive relief under all federal, state, and local laws related to alleged discrimination by Mondelēz Global LLC against blind or visually disabled persons who use screen reader auxiliary aids to access digital content that arose before the settlement becomes effective. Class members, other than the named plaintiff in the lawsuit, are not releasing any claims for monetary damages.

### V. CAN I OBJECT TO THE SETTLEMENT?

You have the right to object to the proposed settlement agreement if you do not like part or all of it.

If you wish to object to the proposed settlement, you must do so in writing on or before _____. Your written objections must:

a) clearly identify the case name and number, *Douglass v. Mondelēz Global LLC*, Case No. 2:22-cv-00875-WSH (W.D. Pa.);

b) be submitted to the Court either by mailing them to the Clerk of the Court for the United States District Court for the Western District of Pennsylvania, 700 Grant Street, Courtroom 3B, Pittsburgh, PA 15219, or by filing them in person at any location of the United States District Court for the Western District of Pennsylvania;

c) and be received on or before _____.

If you wish to appear and present your objection orally at the final approval hearing, you must first submit a written objection and in your written objection you must indicate your intention to appear and be heard at the final approval hearing. If you appear through your own attorney, you are responsible for paying that attorney.

### VI. DO I HAVE A LAWYER IN THIS CASE?

The Court has appointed Kevin Tucker and Kevin Abramowicz of East End Trial Group as Class Counsel on behalf of the class members. Class Counsel's contact information can be found in Section IX.

You do not need to hire a lawyer because Class Counsel is working on your behalf. You do not need to pay Class Counsel, as the settlement provides that Mondelēz Global LLC will pay

their fees and costs in an amount approved by the Court.

## VII.  WHEN AND WHERE WILL THE COURT APPROVE THE SETTLEMENT?

The Court will hold a hearing to decide whether to approve the settlement on _____. At this hearing, the Court will consider whether the settlement is fair, reasonable, and adequate. You are not required to attend the final approval hearing.

## VIII.  HOW DO I GET MORE INFORMATION ABOUT THE SETTLEMENT?

This notice summarizes the proposed settlement. For the precise terms and conditions of the settlement, please see the settlement agreement available at https://www.mondelezADAsettlement.com, contact Class Counsel using the information below, access the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.pawd.uscourts.gov, or visit the office of the Clerk of the Court for the United States District Court for the Western District of Pennsylvania, 700 Grant Street, Courtroom 3B, Pittsburgh, PA 15219, between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

To obtain a copy of this notice in alternate accessible formats, contact Class Counsel using the information below.

## IX. CONTACT INFORMATION

Please do not contact the Court, the Court clerk's office, or defense counsel with questions about this settlement. Any questions must be directed to Class Counsel at the numbers and addresses below.

Class Counsel:
Kevin Tucker
Kevin Abramowicz
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
ktucker@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
Tel. (412) 877-5220
https://eastendtrialgroup.com/